**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NADER 2000 PRIMARY COMMITTEE,
INCORPORATED; RALPH NADER; THE
GREEN PARTY OF NORTH CAROLINA;
DOUGLAS STUBER; MARK DUNLEA,
<u>Plaintiffs-Appellants,</u>

v.

No. 00-2040

GARY O. BARTLETT, in his official
capacity as Executive Secretary-
Director of the North Carolina State
Board of Elections; THE NORTH
CAROLINA BOARD OF ELECTIONS,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-00-348-5-3BR)

Submitted: August 14, 2000

Decided: September 15, 2000

Before WILKINS, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Glenn Moramarco, Elizabeth Daniel, Laura Abel, BRENNAN CEN-
TER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF

LAW, New York, New York for Appellants. Michael F. Easley, North Carolina Attorney General, Susan K. Nichols, Special Deputy Attorney General, Alexander McC. Peters, Special Deputy Attorney General, James Peeler Smith, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ralph Nader, the Nader 2000 Primary Committee, the Green Party of North Carolina, and two registered voters (collectively, "Appellants"), appeal an order of the district court denying their motion for a preliminary injunction in which they sought to compel the state of North Carolina to list Nader as the Green Party candidate for President on the November election ballot. Finding no abuse of discretion, we affirm.

I.

With the goal of placing Nader on the North Carolina November ballot as the Presidential candidate of the Green Party, Nader and his supporters chose to attempt to qualify as a new political party. See generally N.C. Gen. Stat. § 163-96 (1999). State law requires new party aspirants to submit a petition containing the signatures of two percent of the number of registered voters who voted in the most recent general election for Governor. See id. § 163-96(a)(2). For this election cycle, that formula translates to 51,324 such signatures. The heading of each page of the petition must contain the following language in bold print or in capital letters: "THE UNDERSIGNED REGISTERED VOTERS . . . HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY . . . THE SIGNERS

2

OF THIS PETITION INTEND TO ORGANIZE A NEW POLITI-
CAL PARTY TO PARTICIPATE IN THE NEXT SUCCEEDING
GENERAL ELECTION." Id. § 163-96(b). Although the petition is
due to the State Board of Elections on June 1, the effective deadline
is May 17 because by that date the petition must be submitted to
county boards of elections for signature verification. See id. § 163-
96(a)(2), (b1). There is no mandated period during which the signa-
tures must be collected; new party aspirants may begin collecting
petition signatures immediately after the preceding election for Gov-
ernor.

On May 2, 2000, the Nader Committee requested that the State
Board of Elections extend the deadline to August 31, 2000. The
Board denied the request on the ground that it lacked authority to
waive a statutorily imposed deadline. On June 1, 2000, the Green
Party submitted a petition to the Board with 1,956 verified signatures.

Appellants filed suit in the district court on May 16, 2000, claiming
that the ballot access laws in North Carolina present an unconstitu-
tional infringement on their First Amendment rights by, inter alia,
"plac[ing] an undue burden on new or minor political parties that are
seeking ballot status for the presidential race." J.A. 48. They named
Gary O. Bartlett, the Executive Secretary-Director of the state Board
of Elections, and the Board of Elections ("Appellees"), as defendants.
Soon after filing their complaint Appellants filed a motion for a pre-
liminary injunction, requesting that the district court compel the state
of North Carolina to list Nader on the November ballot as the Green
Party candidate for President.

The district court denied Appellants' motion. The court first deter-
mined that Appellants would not suffer irreparable harm from the
denial of their motion for a preliminary injunction, primarily because
any harm suffered by Appellants would have been caused by their
own dilatory efforts at complying with the statutory scheme. The dis-
trict court further found that North Carolina's interest in regulating its
ballot would be harmed if the court issued the preliminary injunction.
Although the district court thus concluded that the balance of harms
favored Appellees, it proceeded with the remainder of its analysis
under the assumption that the balance of harms favored Appellants.
The court nevertheless concluded that Appellants were not likely to

3

succeed on the merits of their claims because it determined that the new party ballot access law was narrowly drawn to advance a state interest of compelling importance. Finally, the court determined that the public interest would not be served by the issuance of the requested preliminary injunction.

II.

When ruling on a request for a preliminary injunction, a district court must consider four factors originally set forth in Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977). Those factors are:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest.

Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (internal quotation marks omitted). After deciding whether the plaintiff will suffer irreparable harm if an injunction is denied and determining the nature of the harm, if any, that defendant will suffer if the injunction is granted, the district court must balance these hardships against one another. See Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812-13 (4th Cir. 1991). The result of this balancing determines the degree to which the plaintiff must establish a likelihood of success on the merits. If the balance of harms "tips decidedly in favor of the plaintiff," it is only necessary for the plaintiff to "raise[ ] questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Id. at 813 (internal quotation marks omitted). If, however, the balance of harms is in equipoise or does not favor the plaintiff, the plaintiff must make a correspondingly

4

higher showing of the likelihood of success. See id. We review a decision of the district court granting or denying preliminary injunctive relief for abuse of discretion. See Rum Creek Coal Sales, 926 F.2d at 358.

Having reviewed the record and the parties' briefs, we conclude that the district court did not abuse its discretion in denying the preliminary injunction sought by Appellants. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

AFFIRMED

5